# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SHAWN RENE GRANTHAM,

    Plaintiff,

v.                                             No. CV 18-620 CG

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Shawn Rene Grantham's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 21), filed November 21, 2018; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 27), filed February 11, 2019; and Mr. Grantham's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 28), filed February 25, 2019.

Mr. Grantham filed an application for disability insurance benefits and supplemental security income on January 14, 2011. (Administrative Record "AR" 180, 186). In both of his applications, Mr. Grantham alleged disability beginning January 1, 2001. *Id.* He later amended his alleged disability onset date to February 1, 2009. (AR 184). Mr. Grantham claimed he was limited in his ability to work due to a rod that was placed in his leg and back pain. (AR 226). Mr. Grantham's applications were denied initially on August 11, 2011, (AR 109-13), and upon reconsideration on November 7, 2011, (AR 124-27).

Mr. Grantham requested a hearing before an Administrative Law Judge ("ALJ"), (AR 131), which was held on April 15, 2014, before ALJ Barry O'Melinn. (AR 20). ALJ O'Melinn issued his decision on July 25, 2014, finding Mr. Grantham not disabled at any time between his initial filing date through the date of his opinion. (AR 29). Mr. Grantham requested review by the Appeals Council, (AR 14), which was denied, (AR 1), making ALJ O'Melinn's opinion the Commissioner's final decision for purposes of judicial review.

On January 22, 2016, Mr. Grantham filed a complaint in the United States District Court for the District of New Mexico requesting review of ALJ O'Melinn's decision. (AR 539). The Court reversed the Commissioner's decision, concluding that ALJ O'Melinn failed to perform an appropriate function-by-function analysis as directed by Social Security Regulation ("SSR") 96-8p. (AR 551). The Court therefore remanded the case for further administrative proceedings and instructed the ALJ to analyze "all of the evidence in the record and perform the analysis as directed by SSR 96-8p." *Id.*

On remand, the Appeals Council vacated the Commissioner's decision and directed that the case be assigned to an ALJ for further proceedings. (AR 474). The Appeals Council noted that, while his case was pending before the U.S. District Court, Mr. Grantham had reapplied for supplemental security income benefits. *See* (AR 693-98). Therefore, the Appeals Council instructed the ALJ to combine Mr. Grantham's claims and issue a new decision on the consolidated claims. (AR 474).

On January 18, 2018, Mr. Grantham appeared for a hearing before ALJ Raul C. Pardo with attorney Michael Armstrong and impartial Vocational Expert ("VE") Ivory Younglood. (AR 433). ALJ Pardo issued his decision March 2, 2018, finding Mr.

Grantham not disabled at any time between the initial filing date through the date of his decision. (AR 425). Mr. Grantham then requested review by the Appeals Council, which was denied, making ALJ Pardo's opinion the Commissioner's final decision for purposes of this appeal.

Mr. Grantham, represented by Mr. Armstrong, argues in his Motion that ALJ Pardo made three reversible errors. (Doc. 21 at 1-2). First, Mr. Grantham argues ALJ Pardo improperly weighed the medical opinions of consultative examiners Karl Moedl, M.D., Em Ward, M.D., and John Vigil, M.D. *Id.* at 1. Next, Mr. Grantham contends that ALJ Pardo erroneously rejected his complaints of pain and did not weigh his complaints using the correct legal standards. *Id.* Finally, Mr. Grantham claims ALJ Pardo failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *Id.* at 1-2. The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Pardo erred in his consideration of the opinions of Dr. Moedl, Dr. Ward, and Dr. Vigil, the Court finds that Mr. Grantham's Motion is well-taken and should be **GRANTED** and this case be **REMANDED** for further proceedings.

**I.   Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Mr. Grantham claimed he was limited in his ability to work due to a rod that was placed in his leg and back pain. (AR 226). At step one, ALJ Pardo determined that Mr. Grantham had not engaged in substantial gainful activity since February 1, 2009, the amended alleged disability onset date. (AR 411). At step two, ALJ Pardo found that Mr. Grantham has the following severe impairments: degenerative disc disease; arthritis of the left knee; status post-open reduction internal fixation of the left distal femur fracture; obesity; and a right fixed elbow deformity. (AR 412).

At step three, ALJ Pardo determined that none of Mr. Grantham's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 413). ALJ Pardo then found that Mr. Grantham has the RFC to perform light work, as defined by 20 C.F.R. §§ 404.1567 and 416.957, with the following limitations: he can lift and/or carry twenty pounds occasionally and ten pounds frequently; his ability to push and/or pull is limited by his ability to lift and/or carry; he can sit and stand/walk for six hours in an eight-hour workday with normal breaks; he can frequently reach laterally with both upper extremities; he can frequently handle items bilaterally; he can occasionally balance and climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally work at unprotected heights; and he is limited to work involving the performance of simple and routine tasks. (AR 414).

In formulating Mr. Grantham's RFC, ALJ Pardo stated that he considered Mr. Grantham's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20

6

C.F.R. §§ 404.1529, 416.929 and SSR 16-3p. (AR 414). In addition, ALJ Pardo stated that he considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1520(c) and 416.920(c). *Id.* ALJ Pardo concluded that some of Mr. Grantham's impairments could be expected to cause his alleged symptoms, but he found that the intensity, persistence, and limiting effects that Mr. Grantham described were not entirely consistent with the evidence in the record. (AR 416).

Turning to the medical evidence in the record, ALJ Pardo stated that he gave "some weight" to the opinions of state agency consultative examiners Dr. Moedl and Dr. Ward. (AR 417, 419, 422). The ALJ stated he discounted these doctors' opinions because they failed to opine on Mr. Grantham's functional abilities. *Id.* Next, ALJ Pardo afforded "little weight" to the opinion of consultative examiner Dr. Vigil because his findings were unsupported by the record and he only examined Mr. Grantham one time. (AR 422). ALJ Pardo also considered treatment notes from medical facilities where Mr. Grantham was treated, including Indian Health Services and the University of New Mexico Hospital. (AR 416-18). In addition, ALJ Pardo considered Mr. Grantham's testimony at both his 2017 and 2018 hearings and the third-party function reports submitted by Mr. Grantham's mother, sister, and friend. (AR 414).

At step four, ALJ Pardo found that Mr. Grantham is unable to perform his past relevant work as a janitor or day laborer. (AR 423). ALJ Pardo then moved to step five, noting that Mr. Grantham was 41 years old on the alleged disability onset date, and was therefore classified as a younger individual in accordance with the Regulations. *Id.* Mr. Grantham subsequently changed age categories throughout the course of these proceedings and was now correctly classified as "closely approaching advanced age."

7

(AR 423). At this step, ALJ Pardo also determined that Mr. Grantham has at least a high school education and is able to communicate in English. *Id.*

Further, ALJ Pardo explained that if Mr. Grantham had the RFC to perform the full range of light work, a finding of not disabled would be directed by Medical-Vocational Rules 202.20 and 202.13. (AR 424). However, ALJ Pardo found that Mr. Grantham's limitations impeded his ability to perform the full range of light work. *Id.* Therefore, ALJ Pardo relied on the testimony of the VE to determine applicable jobs Mr. Grantham could perform in the national economy. *Id.* ALJ Pardo noted that the VE testified at the hearing that an individual with Mr. Grantham's same age, education, work experience, and RFC could perform the jobs of housekeeper and sorter. *Id.* After finding the VE's testimony consistent with the DOT, ALJ Pardo adopted the testimony of the VE and concluded that, because Mr. Grantham is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). *Id.*

## IV. Analysis

In his Motion, Mr. Grantham first argues that ALJ Pardo failed to properly weigh the medical opinions of Dr. Moedl, Dr. Ward, and Dr. Vigil. (Doc. 21 at 1). Mr. Grantham also contends that ALJ Pardo did not properly consider his allegations of pain under the correct legal standards. *Id.* Finally, Mr. Grantham alleges that ALJ Pardo did not resolve a conflict between the VE's testimony and the DOT regarding the jobs of housekeeper and sorter. *Id.* at 1-2.

In response, the Commissioner argues that the opinions of Dr. Moedl, Dr. Ward, and Dr. Vigil, all support ALJ Pardo's RFC assessment. (Doc. 27 at 18). To the extent

their opinions differ from the RFC assessment, the Commissioner contends ALJ Pardo provided sufficient reasoning for rejecting them. *Id.* at 18-19. The Commissioner also argues ALJ Pardo was correct in dismissing Mr. Grantham's subjective complaints of pain because they were unsupported by the objective medical evidence in the record, Mr. Grantham's own reported activities, and evidence of Mr. Grantham's noncompliance with treatment. *Id.* at 21-22. Finally, the Commissioner contends ALJ Pardo did not err in relying on the VE's testimony because it was not in conflict with the DOT. *Id.* at 24.

ALJs are required to adequately discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). While ALJs are not required to discuss every piece of evidence in the record, they cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Moreover, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.

To aid in the ALJ's analysis, the Regulations set forth the following factors that should be considered when assessing the value of each medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

9

20 C.F.R. §§ 404.1527(c), 416.927(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). While not every factor will be applicable in every case, the ALJ must at least explain the decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119 (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In addition, the Commissioner may not rationalize the ALJ's decision post hoc or attempt to supply possible reasons for the ALJ's decision after the fact. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). It follows then, that the court may not make a post hoc effort to "salvage [an] ALJ's decision" and judicial review remains limited to the reasons provided in the ALJ's decision. *Robinson*, 366 F.3d at 1084-85; *Carpenter*, 537 F.3d at 1267 (citation omitted). Thus, this Court may only consider the reasoning proffered by the ALJ, and not any post hoc rationale provided by the Commissioner. *Robinson*, 366 F.3d at 1084 (citations omitted).

### A. <u>Dr. Moedl and Dr. Ward's Medical Opinions</u>

On July 21, 2011, state agency consultative examiner Dr. Moedl examined Mr. Grantham and completed a "History and Physical Examination" form, outlining Mr. Grantham's medical history and physical impairments. (AR 329). Dr. Moedl opined that Mr. Grantham had the following impairments: right elbow frozen at 45 degrees with no further extension or flexion; reach of right arm not as high as left arm; limp of left leg; degenerative arthritis, deformity, pain, limited motion, and weakness of left knee; atrophy and severe weakness of left quadriceps muscles and left thigh; degenerative

lumbar spine arthritis with pain and limited motion; likely injury of femoral nerve; borderline hypertension; and obesity. (AR 331-32).

On December 2, 2016, state agency consultative examiner Dr. Ward conducted a second examination and prepared a "Consultative Evaluation" report. (AR 744-46). Dr. Ward found that Mr. Grantham had the following impairments: hip pain on the right, and groin pain on the left; a bony irregularity and incomplete extension of the right elbow; weakness of hip flexion; walking with a limp; back pain; status-post left distal leg fractures and repair; problem with prolonged standing; obesity; elevated blood pressure; history of substance abuse with reported sobriety for three years; and right upper extremity paranesthesia. (AR 746).

ALJ Pardo stated that he gave "some weight" to the medical opinions of Dr. Moedl and Dr. Ward. (AR 417, 419). ALJ Pardo explained that their opinions "are generally consistent with objective treatment records, which indicate the claimant has obtained little care for his severe impairments, that his substance use issues do not cause him severe impairments, that he is more active than he alleges, and that he is capable of work at the light exertional level with some limitations for reaching, handling, climbing, balancing, and for exposure to unprotected heights." (AR 422). In addition, ALJ Pardo noted that the state agency physicians are "acceptable medical sources who are familiar with agency policy." *Id.* Nevertheless, ALJ Pardo stated he discounted Dr. Moedl and Dr. Ward's opinions because they did not provide opinions on Mr. Grantham's functional limitations. (AR 417, 419). Further, ALJ Pardo stated that "more weight is not given to their opinions, [because Mr. Grantham's] hearing testimony and

Dr. Vigil's opinions indicate that, in an abundance of caution, it is appropriate to limit [Mr. Grantham] to work involving simple and routine tasks due to pain." (AR 422).

ALJ Pardo's RFC determination does not reflect Dr. Moedl's and Dr. Ward's findings that Mr. Grantham is limited in his abilities to reach, walk, and stand due to impairments to his right elbow and left leg. *Compare* (AR 414) *with* (AR 331-32, 746). Therefore, ALJ Pardo was required to adequately explain how these material inconsistencies were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted); SSR 96-5p, 1996 WL 374183, at *5 (explaining that an ALJ is required to weigh medical source reports and provide "appropriate explanations" for accepting or rejecting the opinions).

ALJ Pardo stated that he discounted Dr. Moedl and Dr. Ward's findings because they did not offer opinions on Mr. Grantham's functional limitations. (AR 417, 419, 422). However, both Dr. Moedl and Dr. Ward found that Mr. Grantham is limited in his abilities to reach, walk, and stand due to his right elbow and left leg impairments. For example, they found that he is limited in his ability to reach with his right arm due to his inability to extend or flex his right elbow, and that he is limited in his abilities to walk and stand due to a limp, weakness, and limited motion in his left leg. *See* (AR 331-32, 746). Therefore, ALJ Pardo's reasoning that these doctors did not offer opinions on functional limitations is not supported by the record.

ALJ Pardo also stated that he discounted Dr. Moedl and Dr. Ward's opinions because Mr. Grantham's hearing testimony and Dr. Vigil's opinions indicate that Mr. Grantham should be limited to work involving simple and routine tasks due to pain. (AR

12

422). A limitation to simple and routine tasks is usually used to account for findings of non-exertional impairments. *See Jaramillo v. Colvin*, 576 Fed.Appx. 870, 875 (10th Cir. 2014) (considering whether a limitation to simple and routine tasks sufficiently accounted for findings of mental impairments). Moreover, the Tenth Circuit has repeatedly found that limiting a claimant to simple and routine tasks does not adequately capture findings of specific limitations. *See id.* (holding that a limitation to simple and routine tasks did not clearly relate to specific moderate impairments found by the examining psychiatrist); *Chapo*, 682 F.3d at 1290 n.3 (stating that a restriction to simple work was insufficient to capture several functionally distinct mental limitations). Therefore, ALJ Pardo's finding that Mr. Grantham should be limited to simple and routine tasks does not sufficiently account for Dr. Moedl and Dr. Ward's findings that Mr. Grantham has impairments to his right elbow and left leg and is limited in his abilities to reach, walk, and stand.

In addition, Dr. Moedl and Dr. Ward's findings are supported by other evidence in the record, such as Dr. Vigil's findings that Mr. Grantham: can never lift or carry up to 10 pounds; can sit, stand, and walk for less than 30 minutes at a time; can never reach, push, or pull with the right hand; and can never operate foot controls with the left foot. (AR 778-79). An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Because Dr. Moedl and Dr. Ward's findings are consistent with other medical evidence in the record, ALJ Pardo erred by relying only on the medical evidence that supported his RFC determination. *See Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontroverted

medical opinion taking only the parts that are favorable to a finding of nondisability.");
*see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). For these reasons, the Court finds that ALJ Pardo did not provide legally sufficient reasons for rejecting portions of the opinions of Dr. Moedl and Dr. Ward.

### B. Dr. Vigil's Medical Opinions

On December 11, 2017, Dr. Vigil examined Mr. Grantham and completed a "Consultative Examination/Impairment Rating" report at the request of Mr. Grantham's attorney. (AR 771). In his report, Dr. Vigil concluded that Mr. Grantham has the following impairments: "Chronic left lower extremity pain"; "status post ORIF left femur fracture"; "status post ORIF left tibia fracture"; "chronic right elbow pain"; "chronic bilateral knee pain"; and "chronic low back pain." (AR 775).

On January 9, 2018, Dr. Vigil also completed "Assessment of Ability to do Work-Related Activities" forms, assessing Mr. Grantham's physical and non-physical limitations. (AR 778-780). In these assessments, Dr. Vigil opined that Mr. Grantham has the following physical limitations: he can never lift or carry up to 10 pounds; he can sit, stand, and walk for less than 30 minutes; he needs an assistive device to ambulate, balance, and reduce pain; he can never reach or push/pull with his right hand due to "fixed deformity of right elbow;" and he can never operate foot controls with his left foot or climb stairs and ramps, balance, stoop, kneel, or crouch, due to severe left leg weakness and knee pain. (AR 778-79). In addition, Dr. Vigil concluded that Mr.

Grantham has the following non-physical limitations: he has severe pain that causes sleep disturbances, fatigue, and requires him to rest or lie down at regular intervals; he has a moderate impairment in his abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, and work in coordination with/or in proximity to others without being distracted by them; and he has a marked limitation in his abilities to maintain physical effort for long periods of time without a need to decrease activity or pace, and in his ability to complete a normal workday and workweek without interruptions from pain or fatigue based symptoms. (AR 780).

ALJ Pardo gave "little weight" to Dr. Vigil's opinions because he only examined Mr. Grantham one time and his findings were unsupported by the record. (AR 422-23). ALJ Pardo stated that Dr. Vigil's 2018 findings that Mr. Grantham had limitations due to bilateral degenerative joint disease of the knees and fixed deformity of the right elbow were not conditions that were included in Dr. Vigil's 2017 evaluation. (AR 422). In addition, ALJ Pardo stated that Dr. Vigil's findings were not supported by evidence that Mr. Grantham received conservative treatment for his impairments and worked in both 2010 and 2014. *Id.* ALJ Pardo further stated that Dr. Vigil's finding that Mr. Grantham requires an assistive device is inconsistent with Dr. Vigil's treatment notes because Mr. Grantham appeared without an assistive device and reported he did not use a cane. (AR 423). Finally, ALJ Pardo found that Mr. Grantham's testimony that he did not take pain medication, could lift 15 pounds, and could walk a quarter of a mile at a time, is inconsistent with Dr. Vigil's finding that Mr. Grantham could do no lifting or carrying and had severe pain. *Id.*

ALJ Pardo's RFC determination does not reflect Dr. Vigil's findings regarding Mr. Grantham's abilities to lift, carry, sit, stand, walk, reach, push/pull, operate foot controls, climb stairs or ramps, balance, stoop, kneel, or crouch. *Compare* (AR 414) *with* (AR 778-79). In addition, ALJ Pardo's RFC determination does not account for Dr. Vigil's findings regarding Mr. Grantham's non-exertional limitations in his abilities to: maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerance; work in coordination with/or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from pain or fatigue; and perform at a consistent pace without unreasonable number and length of rest periods. *Id.* Therefore, as with Dr. Moedl and Dr. Ward's opinions. ALJ Pardo was required to adequately explain why he did not include these limitations in his RFC determination. *See* SSR 96-8p, 1996 WL 274184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

ALJ Pardo's first reason for discounting Dr. Vigil's opinions is that they were based on a single examination. (AR 422). While it is appropriate under 20 C.F.R. §§ 404.1527(c) and 416.927(c) for ALJ Pardo to consider the length of the treatment relationship in considering Dr. Vigil's opinions, the Tenth Circuit has held that this is not an adequate basis on its own for rejecting the opinions of consultative examiners. *Chapo*, 682 F.3d at 1291 (explaining that an ALJ may not reject the opinions of examining doctors simply because they do not have a lengthy treatment relationship with the claimant). The Tenth Circuit explains that if an ALJ can reject examining

doctors' opinions solely on the basis of the length of treatment, "the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings." *Id.* Nevertheless, since ALJ Pardo provides additional reasons for discounting Dr. Vigil's opinions, the Court finds no error in ALJ Pardo's consideration of the length of the treatment relationship.

ALJ Pardo's next reason for rejecting some of Dr. Vigil's opinions is that Dr. Vigil's 2018 findings that Mr. Grantham had limitations due to bilateral degenerative joint disease of the knees and fixed deformity of the right elbow were not conditions that were included in Dr. Vigil's 2017 evaluation. (AR 422). However, in his 2017 consultation, Dr. Vigil noted that Mr. Grantham's right elbow is fixed at 45 degrees flexion, his knees have crepitus and tenderness, and he has chronic bilateral knee pain. (AR 745). These findings support Dr. Vigil's 2018 findings that Mr. Grantham was limited in his abilities to carry, lift, reach, push, pull, stand, and walk. Therefore, the Court finds that ALJ Pardo's rejection of Dr. Vigil's 2018 opinions because they are inconsistent with his 2017 findings is not supported by the record.

Finally, ALJ Pardo stated Dr. Vigil's opinions were not supported by other evidence in the record, such as that Mr. Grantham: received conservative treatment; worked in 2010 and 2014; appeared without an assistive device and reported he did not use a cane; and testified that he did not take pain medication, could lift 15 pounds, and could walk a quarter of a mile at a time. (AR 422-23). Nevertheless, ALJ Pardo did not discuss the medical evidence in the record supporting Dr. Vigil's findings, such as evidence documenting: severe injuries to Mr. Grantham's left knee and left quadriceps resulting in pain, deformity, limited motion, weakness, and atrophy; limb length

17

discrepancy and use of a shoe lift; right elbow frozen at 45 degrees with no further extension or flexion; atrophy of right forearm; and hip and groin pain. *See* (AR 329, 331-32, 376, 385-88, 390, 745-46, 774-75). In addition, while Mr. Grantham did testify that he can walk about a quarter mile, he later clarified that he can only walk about two blocks. (AR 443). Mr. Grantham also testified that he can only sit about 15 to 20 minutes at a time, and can only stand for up to 2 to 3 minutes at a time without moving. (AR 442-43, 457). Therefore, ALJ Pardo's failure to discuss the evidence supporting Dr. Vigil's findings is legal error because, "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009.

In her Response, the Commissioner argues that Dr. Vigil's opinions are not supported by his own findings, such as that Mr. Grantham: could stand up from a chair without assistance; get onto the examination table with only some difficulty; and had only minimal paraspinal muscle tenderness and muscle spasms, negative straight leg raising tests, a good range of motion and stability in his knees, and only "some" right forearm atrophy. (Doc. 27 at 20) (citing AR 774-75). However, none of this evidence was given as a reason by ALJ Pardo to discount Dr. Vigil's opinions, so this is a post hoc rationalization by the Commissioner. *See Robinson*, 355 F.3d at 1084 (explaining that an ALJ's decision must be evaluated "based solely on the reasons stated in the decision").

Based on the foregoing, the Court finds that ALJ Pardo's reasons for rejecting Dr. Vigil's opinions are not supported by the record, and that ALJ Pardo failed to adequately explain why he rejected evidence that supported Dr. Vigil's opinions. Therefore, the

Court finds that ALJ Pardo failed to provide legally sufficient reasons for his decision, which requires remand.

   V.     **Conclusion**

For the reasons stated above, the Court finds that ALJ Pardo failed to properly consider the findings and opinions of Dr. Moedl, Dr. Ward, and Dr. Vigil. The Court will not address Mr. Grantham's remaining claims because they may become moot upon remand.

**IT IS THEREFORE ORDERED** that Mr. Grantham's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 21), is **GRANTED** and this case is to be **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE